UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,         :     INFORMATION

       -v.-                        :     13 Cr.

HENRY SEGGERMAN,                  :

       Defendant.                  :     13 CRIM 663

- - - - - - - - - - - - - - - - x

<u>COUNT ONE</u>
(Conspiracy)

The United States Attorney charges:

1. At all times relevant to this Information, the Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States.

2. At all times relevant to this Information, HENRY SEGGERMAN, the defendant, was a United States citizen who resided in Los Angeles, California, and New York, New York.

3. A co-conspirator not named as a defendant herein was a lawyer based in Zurich, Switzerland (the "Swiss Lawyer"), who worked with members of HENRY SEGGERMAN's family in opening and maintaining undeclared Swiss and other foreign bank accounts, as well as entities, such as corporations and trusts, that nominally owned and controlled those accounts.

4. A co-conspirator not named as a defendant herein was Michael Little, a United Kingdom citizen, financial advisor, and,



beginning in or around 2005, an attorney licensed to practice in the United Kingdom and New York. Little, who maintained a law office in New York between 2005 and 2008, discussed with HENRY SEGGERMAN, the defendant, and worked with other co-conspirators, including members of HENRY SEGGERMAN's family, the implementation of financial transactions and other schemes in order to surreptitiously transfer assets and funds from foreign entities and accounts, including undeclared Swiss bank accounts, to United States citizens and their U.S.-based bank accounts and entities.

5.  A co-conspirator not named as a defendant herein was an accountant based in Cranford, New Jersey (the "New Jersey Accountant"), who, together with Michael Little and the Swiss Lawyer, assisted HENRY SEGGERMAN, the defendant, and other co-conspirators in effectuating the surreptitious transfer of assets and funds from undeclared foreign bank accounts and entities into the United States without being detected by the IRS. Among the entities that HENRY SEGGERMAN, the New Jersey Accountant, Michael Little, and others utilized or caused to be utilized in carrying out the surreptitious transfers was Steiner Productions, a United States partnership owned principally by another member of the SEGGERMAN family.

### Estate Tax Obligations

6.  Executors of estates have an obligation to file a United States Estate (and Generation-Skipping Transfer) Tax Return, IRS Form 706, generally within nine months of the death of a

decedent. The estate tax is a tax imposed on the transfer of the taxable estate of the decedent. Computation of the estate tax includes, among other things, ascertainment of the fair market value of everything, throughout the world, that the decedent owned or had an interest in at the date of death, including cash and securities, real estate, insurance, trusts, annuities, business interests, and other assets. The total value of all of these items constitutes the decedent's "gross estate." After determining the gross estate, certain deductions are allowed in arriving at the amount of the decedent's "taxable estate." These deductions may include mortgages and other debts, estate administration expenses, property that passes to surviving spouses, and qualified charities. For taxable estates in excess of $3 million, estates of decedents who passed away during the 2001 tax year were required to pay a tax of $1,290,800 for the first $3 million of the taxable estate, plus 55% of any excess amount.

### Obligations Of United States Taxpayers With Respect to Foreign Financial Accounts

7. Citizens and legal residents of the United States who have income in any one calendar year in excess of a threshold amount ("U.S. taxpayers") are obligated to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the IRS. On Form 1040, U.S. taxpayers are obligated to report their income from any source, regardless of whether the source of their income is inside or outside the United States. In addition, on Schedule B of Form 1040, the filer must indicate whether "at any

time during [the relevant calendar year]" the filer had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account." If the U.S. taxpayer answers that question in the affirmative, then the U.S. taxpayer must indicate the name of the particular country in which the account is located.

8.  Separate and apart from the obligation to file Forms 1040 that include all income, U.S. taxpayers who have a financial interest in, or signature authority over, a financial account in a foreign country with an aggregate value of more than $10,000 at any time during a particular calendar year are required to file with the IRS a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR"). The FBAR for any calendar year is required to be filed on or before June 30 of the following calendar year. In general, the FBAR requires that the U.S. taxpayer identify the financial institution with which the financial account is held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR is being filed.

### The Estate of The New York Businessman

9.  In or about May 2001, a prominent New York businessman (the "Businessman"), and the father of HENRY SEGGERMAN, the defendant, passed away, leaving an estate valued in excess of approximately $24 million - more than half of which was maintained

in undeclared foreign bank and financial accounts. Pursuant to a plan established by various co-conspirators, including the Swiss Lawyer, Michael Little, and others, and in an attempt to conceal the true value of the Businessman's taxable estate, the Businessman arranged for his surviving spouse — a co-executor of the Businessman's estate — to receive after the Businessman's death approximately $5 million from the undeclared foreign bank and financial accounts. This $5 million was in addition to a substantial amount of United States-based money and property left to the Businessman's surviving spouse by the Businessman through his will and certain trusts. The Businessman also arranged for five of his children — four of whom, including HENRY SEGGERMAN, the defendant, were also co-executors of his estate — each to inherit approximately $1.6 million from the aforementioned foreign bank and financial accounts.

    10. As a result of the successful implementation of the aforementioned plan to hide assets, which was carried out by HENRY SEGGERMAN, the Swiss Lawyer, Michael Little, and other co-conspirators, the Estate Tax Return that was signed by HENRY SEGGERMAN and other executors, and filed with the IRS in connection with the administration of the Businessman's estate, falsely and fraudulently omitted over $12 million in estate assets — $5 million maintained in foreign entities and accounts by the Swiss Lawyer and Michael Little on behalf of the Businessman's surviving spouse, and over $7 million that was maintained in foreign entities and bank

accounts, to be divided equally among HENRY SEGGERMAN and four of his siblings and then directed or maintained pursuant to their wishes.

### Statutory Allegations

11. From in or about 2001 through in or about 2010, in the Southern District of New York and elsewhere, HENRY SEGGERMAN, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate and agree together and with each other to defraud the United States and an agency thereof, to wit, the IRS, and to commit offenses against the United States, to wit, violations of Title 26, United States Code, Sections 7206(2) and 7206(1).

### Objects of the Conspiracy

12. It was part and an object of the conspiracy that HENRY SEGGERMAN, the defendant, and others known and unknown, willfully and knowingly did defraud the United States of America and the IRS by impeding, impairing, defeating, and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of income taxes.

13. It was further a part and an object of the conspiracy that HENRY SEGGERMAN, the defendant, and others known and unknown, willfully and knowingly would and did aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of U.S. Individual Income Tax Returns, Forms 1040, for his sibling ("EJS") for the calendar years 2004 and

2006, which returns were false and fraudulent as to material matters, in that EJS failed, on Schedule B, Part II, line 7a, to report that he had an interest in, or signatory or other authority over, bank, securities, and other financial accounts in Switzerland, in violation of Title 26, United States Code, Section 7206(2).

    14. It was further a part and object of the conspiracy that HENRY SEGGERMAN, the defendant, and others known and unknown, including Michael Little, the New Jersey Accountant, and various members of the Businessman's family, willfully and knowingly agreed that members of the Businessman's family would and did subscribe to a false United States Estate (and Generation-Skipping Transfer) Tax Return, IRS Form 706, which return contained and was verified by a written declaration that it was made under the penalties of perjury, and which HENRY SEGGERMAN, the defendant, and others did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

### Overt Acts

    15. The following overt acts, among others, were committed and caused to be committed, in the Southern District of New York and elsewhere, by HENRY SEGGERMAN, the defendant, and his co-conspirators in furtherance of the conspiracy and to effect its objects:

    a. On or about August 8, 2001, HENRY SEGGERMAN, the defendant, met with co-conspirators, including three of his

siblings ("YS," "SS," and "EJS"), the Swiss lawyer, and Michael Little, at a hotel in New York, New York, to discuss the funds left in foreign accounts by the Businessman, and the inheritance by HENRY SEGGERMAN and his siblings of funds left in undeclared foreign bank accounts.

   b. On or about January 9, 2002, Michael Little emailed HENRY SEGGERMAN, the defendant, to inform SEGGERMAN that Michael Little intended to fly into the United States at the end of January 2002 to have HENRY SEGGERMAN's mother ("AS") sign a letter that would transfer assets from one undeclared offshore bank account to another account controlled by the Swiss Lawyer, among others.

   c. On or about August 5, 2002, HENRY SEGGERMAN, the defendant, signed a United States Estate (and Generation-Skipping Transfer) Tax Return, Form 706, which was subsequently filed with the IRS, and which failed to report the funds held by the Businessman in undeclared offshore bank accounts.

   d. On or about August 12, 2002, HENRY SEGGERMAN, the defendant, inquired of Michael Little whether the children of the Businessman could establish an entity similar to the entity that Michael Little and the New Jersey Accountant helped establish for AS, HENRY SEGGERMAN's mother.

   e. On or about September 2, 2002, in follow-up to the email sent by HENRY SEGGERMAN on August 12, 2002, Michael Little contacted the New Jersey Accountant to discuss whether a similar entity created for AS could be created for children of the

Businessman and AS.

   f. On or about September 3, 2003, the New Jersey Accountant wrote to Michael Little, informing him that the New Jersey Accountant previously met with SS and, "after reviewing her needs," setup an LLC for SS.  SS thereafter used the LLC to surreptitiously transfer funds into the United States without the IRS detecting the transfers.  The New Jersey Accountant also informed Michael Little on September 3, 2003 that he would be happy to meet with any of SS's other siblings to discuss the performance of the same services as those provided to SS.

   g. On or about December 1, 2004, HENRY SEGGERMAN, the defendant, along with the assistance of the Swiss lawyer, caused the transfer of approximately $60,000 to the United States bank account of a foundation controlled by SEGGERMAN; those funds, labeled a "donation" to the foundation, had been transferred by the Swiss Lawyer from the undeclared Swiss bank account of EJS.  HENRY SEGGERMAN, the defendant, thereafter caused the transfer of $60,000 from his foundation to EJS in the United States, labeling this final transfer a "loan."  HENRY SEGGERMAN, the defendant, aided and assisted these transactions, knowing the purpose of the transfer was to allow EJS to obtain access to his undeclared foreign bank account in a way that hid the transfer from the IRS.

   h. On or about October 21, 2005, EJS filed with the IRS a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for tax year 2006, which EJS made and subscribed under

penalties of perjury, in which EJS failed to report his interest in and signatory authority over at least one foreign bank account.

  i. On or about February 28, 2006, HENRY SEGGERMAN, the defendant, along with the assistance of the Swiss lawyer, caused the transfer of approximately $58,700 to the United States bank account of a foundation controlled by SEGGERMAN; those funds, labeled a "donation" to the foundation, had been transferred by the Swiss Lawyer from the undeclared Swiss bank account of EJS. HENRY SEGGERMAN, the defendant, thereafter caused the transfer of $58,700 from his foundation to EJS in the United States, labeling this final transfer a "loan." HENRY SEGGERMAN, the defendant, aided and assisted these transactions, knowing the purpose of the transfer was to allow EJS to obtain access to his undeclared foreign bank account in a way that hid the transfer from the IRS.

  j. On or about July 25, 2007, HENRY SEGGERMAN, the defendant, discussed with Michael Little the amount of money that AS should receive each month from her undeclared foreign bank account.

  k. On or about October 15, 2007, EJS filed a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for tax year 2006, which EJS made and subscribed under penalties of perjury, in which EJS failed to report his interest in and signatory authority over at least one foreign bank account.

  l. In or around February and March of 2009, HENRY SEGGERMAN, the defendant, requested that Michael Little and the

Swiss Lawyer implement a budget for AS, whereby AS would have access to a certain amount of funds left to AS by the Businessman, which funds were being held and controlled by Michael Little and the Swiss Lawyer in an undeclared foreign bank account.

(Title 18, United States Code, Section 371.)

## COUNT TWO
(Subscribing to a False Estate Tax Return)

The United States Attorney further charges:

16. On or about August 2, 2002, in the Southern District of New York and elsewhere, HENRY SEGGERMAN, the defendant, willfully and knowingly did make and subscribe a U.S. Estate (and Generation-Skipping Transfer) Tax Return, Form 706, which pertained to the estate of his father, who died on May 19, 2001, which return contained and was verified by the written declaration of HENRY SEGGERMAN that it was made under penalties of perjury, and which return HENRY SEGGERMAN did not believe to be true and correct as to every material matter, in that SEGGERMAN omitted, on line 1, "Total gross estate less exclusion," more than $10 million in funds and assets held in foreign bank accounts that his father owned, controlled, and had a financial interest in at the time of his death, whereas as HENRY SEGGERMAN then and there well knew and believed, the aforementioned funds and assets held in the foreign

accounts should have been included on the Estate Tax Return as part of his father's total gross estate.

(Title 26, United States Code, Section 7206(1);
Title 18 United States Code, Section 2.)

COUNT THREE
(Aiding and Assisting in the Filing of False
Individual Income Tax Returns)

The United States Attorney further charges:

17. On or about the filing dates set forth below, in the Southern District of New York and elsewhere, HENRY SEGGERMAN, the defendant, willfully and knowingly did aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of U.S. Individual Income Tax Returns, Forms 1040, for EJS for the calendar years set forth below and filed on or about the dates indicated below. The returns were false and fraudulent as to material matters, in that EJS failed, on Schedule B, Part II, line 7a, to report that he had an interest in, or signatory or other authority over, bank, securities, and other financial accounts in Switzerland.

| Calendar Year | Approximate Date of Filing |
|---|---|
| 2004 | October 21, 2005 |
| 2006 | October 15, 2007 |

(Title 26, United States Code, Section 7206(2).)

*Preet Bharara*
PREET BHARARA
United States Attorney